## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No.  06-152 (PLF) |
| v. | Judge Paul L. Friedman |
| TAJSHA WASI,<br>　　　　　　　Defendant. | Hearing Date: October 27, 2006 |

## GOVERNMENT'S OPPOSITION TO
## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this opposition to defendant's Motion to Suppress Statements. The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

## I.　　　FACTS

The defendant has been charged in an eight-count indictment with Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(A)(iii); Unlawful Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)©; Unlawful Possession with Intent to Distribute Cannabis, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(D ); Unlawful Possession with Intent to Distribute Ecstasy, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)©; Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. Section 924 (c)(1); Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 21 U.S.C. Section 922(g)(1); and Unlawful Maintenance of a Premises to Manufacture, Distribute, Store and Use a Controlled Substance, in violation of 21 U.S.C. Section 856(a)(2).

On May 4, 2006, at approximately 7:40 p.m., Metropolitan Police Department officers executed a search warrant at 3631 6th Street, Apartment 3, Southeast, Washington, D.C.  Upon entering the apartment, the officers found defendant Tajsha Wasi along with an infant and an eight year old child in a bedroom.  While the majority of the officers searched the apartment, Detective William Witkowski escorted defendant Wasi to the kitchen.  There, he advised her of her Miranda rights and asked whether she understood those rights and was willing to speak with the detective.  Defendant indicated that she was.  Detective Witkowski asked her who was the lessee of the apartment.  Defendant stated that she was the only lessee.  At that point, another officer brought in a photograph of the co-defendant, Shane Wooden, and Detective Wooden asked if anyone else lived in the apartment.  Defendant stated that she was the only one who lived in the apartment on a full time basis, but that defendant Wooden sometimes visited the apartment.  Detective Witkowski then asked defendant Wasi whether there were any weapons or drugs in the apartment. Defendant Wasi replied, "If you find any weapons, they are not mine."  Defendant Wasi also stated, "[i]f you find any drugs," while pointing towards the living room area.  She then trailed off and did not complete her statement.  At that point, defendant Wasi indicated that she wanted to speak with an attorney.  Later, officers found a safe in one of the bedrooms.  When Detective Witkowski asked whether she knew where the key to the safe was, defendant Wasi informed him that it was on the top shelf in a coffee can.

While defendant Wasi was in the kitchen, officers completed their search of the apartment. In the living room, the officers found a cigar containing marijuana and a ziplock bag containing marijuana on the living room table and a plastic green egg containing 12 ziplocks of crack cocaine on the floor near the living room table.  In the hallway closet, the officers recovered a shoebox

containing a digital scale and a large ziplock bag with 322 grams of marijuana in it and two Kevlar

vests. In the kitchen, officers found, in part, a purple plastic egg with two ziplocks of crack cocaine,

a digital scale, a hot plate, empty small ziplock bags, Inositol, and $1,115 on the top of the kitchen

cabinets. In the kitchen cabinets, the officers recovered a .380 caliber Smith and Wesson pistol with

a magazine containing .380 caliber ammunition, 14 ziplocks of crack cocaine; and a sandwich bag

with 51 grams of crack cocaine. Under a child's bed in one of the bedrooms, officers found a coffee

can containing three colored plastic eggs. Inside each egg, there was 15 ziplocks of crack cocaine.

In another bedroom, officers found 22 pills of ecstasy in three ziplock bags inside of a jewelry box.

In a bag in that same bedroom, there were eight additional pills of ecstasy. In the bedroom safe, the

officers discovered $5,000 and a digital scale.

## ARGUMENT

Defendant is now moving to suppress her statements to the police on the grounds that she did

not knowingly and voluntarily waive her rights under Miranda v. Arizona, 384 U.S. 436 (1966),

before making her statements. The evidence at the motions hearing will establish that the defendant

did knowingly and voluntarily waive her Miranda rights and speak with the officers prior to invoking

her right to an attorney. Accordingly, all of the statements defendant made prior to the invocation

are admissible. Further, even the statement defendant made regarding the key after the invocation

is admissible for impeachment purposes because, as the evidence at the motions hearing will

demonstrate, it was voluntarily made.

The scriptures of Miranda are implicated when two circumstances are both present: the

defendant is in custody, and he is being interrogated. Miranda v. United States, 384 U.S. 436 (1966).

In this case, the government concedes that defendant Wasi was in custody and being interrogated when she responded to Detective Witkowski's questions.

Nonetheless, the statements defendant Wasi made prior to asking for an attorney can be used against her as evidence, if the government proves by a preponderance of the evidence, Colorado v. Connelly, 479 U.S. 157, 168 (1987), that she waived her rights "voluntarily, knowingly and intelligently," Miranda, 384 U.S. at 444.   A defendant's waiver of Miranda rights involves two separate questions.   The government must establish by preponderance of the evidence that the statement defendant made was voluntarily made.   See Lego v. Twomey, 404 U.S. 477, 489 (1972). To determine whether a statement was voluntarily made, this Court must examine the totality of the circumstances to determine whether the defendant's "will has been overborne and his capacity for self-determination critically impaired."   See Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973); Connelly, 479 U.S. at 167 (1986).   In making this determination,

> a district court must examine 'the totality of all the surrounding circumstances--both the characteristics of the accused and the details of the interrogation.'   Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047, 36 L. Ed.2d 854 (1973). Relevant factors include:  the youth of the accused; his lack of education; or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.

United States v. Rodney, 956 F.2d 295, 297 (D.C. Cir. 1992).

The second step of the analysis focuses on whether the waiver was "knowing and intelligent," or in other words "whether it was made with the full awareness of both the nature of the right being abandoned and the consequence of the decision to abandon it."   Moran v. Burbine, 475 U.S. 412, 421 (1986).   This step focuses on the particular facts, background, experience and conduct of the accused.   North Carolina v. Butler, 441 U.S. 369, 374 (1979).   "Only if the totality of circumstances

surrounding the interrogation reveal uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran at 475 U.S. at 421.

The government expects that the evidence at the motions hearing will demonstrate that defendant's waiver was voluntarily, knowingly and intelligently made. First, defendant's will was not overborne. The defendant identifies no coercive police activity, and the circumstances of defendant's statement do not suggest that it was the product of coercive police activity, or was in any other way involuntary.

Further, even the statement defendant made about the key after asking for an attorney is admissible at trial for impeachment purposes. Assuming, arguendo, that the officers violated Miranda in obtaining this statement, the evidence at the motions hearing will establish that it was voluntarily made. Accordingly, it is admissible due to its voluntariness. Harris v. New York, 401 U.S. 222, 224-26 (1971); United States v. Moore, 104 F.3d 377, 388 (D.C. Cir. 1997) (noting use of statements made in violation of Miranda as impeachment material).[1]

---

[1]    In any event, even should the Court find that this statement was made in violation of the defendant's Miranda rights, the key itself and the contraband found in the safe are still admissible because defendant's statement about the key was voluntarily made. See United States v. Patane, 542 U.S. 630, 636 (2004)( "[T]he Miranda rule protects against violations of the Self-Incrimination Clause, which in turn, is not implicated by the introduction of physical evidence resulting from voluntary statements.")

WHEREFORE, the United States respectfully submits that defendant's motion to suppress statements should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

_____

Denise M. Clark
Assistant United States Attorney
Major Crimes Section, D.C.  Bar No. 479149
555 4th Street, N.W.  #4840
Washington, DC 20530
(202)353-8213; Fax: 353-9414

_____    CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served on the attorney for the defendant, Tony Jones, this _____ day of October, 2006.

_____

Denise M. Clark
Assistant United States Attorney